UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| J.B.C.O., J.E.C.M., minor child J.S.C.M., A.J.H.G., A.D.B.A., and S.V.M.S., *by and through their next friend E.K.M.P.*, | Civil No. 26-424 (JRT/DJF) |
| Petitioners, | |
| v. | |
| PAMELA BONDI, *Attorney General of the United States*; KRISTI NOEM, *Secretary, U.S. Department of Homeland Security*; TODD M. LYONS, *Acting Director, U.S. Immigration and Customs Enforcement*; and DAVID EASTERWOOD, *Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*, | |
| Respondents. | |
| S.M., | |
| Petitioner, | Civil No. 26-639 (JRT/DTS) |
| v. | |
| PAMELA BONDI, *Attorney General of the United States*; KRISTI NOEM, *Secretary, U.S. Department of Homeland Security*; TODD M. LYONS, *Acting Director, U.S. Immigration and Customs Enforcement*; and DAVID EASTERWOOD, *Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*, | |
| Respondents. | |

| | |
|---|---|
| CHRISTIAN A.S.C., | |
| Petitioner, | Civil No. 26-778 (JRT/LIB) |
| v. | |
| PAMELA BONDI, *Attorney General of the United States*; KRISTI NOEM, *Secretary, U.S. Department of Homeland Security*; TODD M. LYONS, *Acting Director, U.S. Immigration and Customs Enforcement*; DAVID EASTERWOOD, *Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; MARY DE ANDA-YBARRA, *Director, El Paso Field Office, Immigration and Customs Enforcement*; and WARDEN, *Director of the El Paso Camp East Montana*, | |
| Respondents. | |
| ROSMARY N.A., | |
| Petitioner, | Civil No. 26-832 (JRT/JFD) |
| v. | |
| DAVID EASTERWOOD, *Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; KRISTI NOEM, *Secretary, U.S. Department of Homeland Security*; and PAMELA BONDI, *Attorney General of the United States*, | |
| Respondents. | |

RIKY A.M.L.,

                           Petitioner,      Civil No. 26-1429 (JRT/JFD)

v.

PAMELA BONDI, *Attorney General of the United States*; KRISTI NOEM, *Secretary, U.S. Department of Homeland Security*; and TODD M. LYONS, *Acting Director, U.S. Immigration and Customs Enforcement*,

                           Respondents.

---

Claire Glenn, **CLIMATE DEFENSE PROJECT**, Post Office Box 7040, Minneapolis, MN 55407, for Petitioners J.B.C.O., J.E.C.M., minor child J.S.C.M., A.J.H.G., A.D.B.A., and S.V.M.S.

Andy Taylor, Larry E. LaTarte, and William M. MacKinnon Morrow, **FAEGRE DRINKER BIDDLE & REATH LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402; Ariana Kiener, E. Michelle Drake, and Jordan C. Hughes, **BERGER MONTAGUE PC**, 1229 Tyler Street Northeast, Suite 205, Minneapolis, MN 55413, for Petitioner S.M.

Mary Kaczorek and Luke Grundman, **MID-MINNESOTA LEGAL AID**, 111 North Fifth Street, Suite 100, Minneapolis, MN 55403; Laura Farley, **LATHROP GPM LLP,** 80 South Eighth Street, Suite 3100, Minneapolis, MN 55402, for Petitioner Christian A.S.C.

Paschal O. Nwokocha, **NWOKOCHA & OPERANA LAW OFFICES, LLC**, 105 Fifth Avenue South, Suite 550, Minneapolis, MN 55401, for Petitioner Rosmary N.A.

Joshua J. Rissman, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402, for Petitioner Riky A.M.L.

Daniel Rosen, David W. Fuller, Jesus Cruz Rodriguez, Matthew Isihara, and Friedrich A.P. Siekert, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Respondents.

**MEMORANDUM OPINION AND ORDER**

During Operation Metro Surge, ICE repeatedly failed to return personal property to detainees ordered released by the Court. In some cases, weeks after their release, and in violation of Court orders, Petitioners continue to be deprived of access to their most essential physical possessions, intensifying the harm of their unlawful arrests and presenting further risks to their safety, liberty, and well-being.

Where Respondents have failed to locate Petitioners' lost or missing property, Petitioners may now submit claims for compensation under the Federal Torts Claims Act (FTCA). The Court will order Respondents to promptly remedy all ongoing violations of Court orders in these cases by compensating all claims submitted by Petitioners' under the FTCA within 30 days of this Order. The Court concludes that holding Respondents or their counsel in contempt is not the appropriate action yet—but the Court directs Respondents to treat Petitioners' FTCA claims with the same urgency that it used when arresting and transporting detainees, including these Petitioners, out of the state of Minnesota during Operation Metro Surge.

To ensure compliance, the Court will schedule a hearing at 2:00 p.m. on April 6, 2026, to address whether and to what extent Petitioners' claims have not been satisfied. If Petitioners' claims have not been satisfied by that date—more than thirty days after the date of this Order—the Court will impose civil contempt and daily civil fines until full

compliance is achieved. A primary question at the hearing will be the identification of the appropriate official to pay the civil fines.

## BACKGROUND

Each of the above-captioned cases began when Petitioners sought habeas relief after being arrested and detained by immigration officials. After the Petitioners sought habeas relief, the Court concluded that Petitioners' arrest and detention was unlawful and ordered their immediate release. But in each case, Respondents continue to violate the terms of the Court's orders because they have retained possession of the Petitioners' personal property collected during their arrest and detention without any lawful basis to do so. Because the records are in some cases quite extensive, the Court will summarize only the most pertinent facts and violations.

### I.     FACTS

#### A.     J.B.C.O., J.E.C.M., J.S.C.M., A.J.H.G., A.D.B.A., and S.V.M.S.

Petitioners J.B.C.O., J.E.C.M., J.S.C.M., A.J.H.G., A.D.B.A., and S.V.M.S. were arrested at gunpoint in their home on January 15, 2026, and sought habeas relief. (*See* Civ. No. 26-424, Docket No. 4.) On January 19, 2026, the Court ordered Respondents to produce a warrant justifying entry into Petitioners' home by 5:00 p.m. (Civ. No. 26-424, Docket No. 6.) Respondents did not provide such a warrant, and the Court ordered the Petitioners' release within 72 hours. (Civ. No. 26-424, Docket No. 9.) Respondents did not release Petitioners within 72 hours, violating the Court's order. On January 25, 2026, the Court issued a further Order noting that Respondents had already violated multiple

orders in the case, and in fact had "not made a single filing on the Docket in this case." (Civ. No. 26-424, Docket No. 14.) The Court stated that if "this Order is not fully complied with, the next step is a hearing to determine who will be held in contempt of the Courts Orders in this case and sanctioned." (*Id.*) From the record available to the Court, Respondents did not release all Petitioners until January 25, 2026. (*See* Civ. No. 26-424, Docket No. 15.)

On February 9, 2026, Petitioners' counsel filed a Motion for Order to Show Cause stating that Petitioners had been released without all of their personal belongings (including one Petitioner's driver's license and work permits) and with conditions. (Civ. No. 26-424, Docket No. 18.) On February 21, 2026, the Court directed Respondents, within 72 hours, to "file a reasoned memorandum . . . demonstrating the lawful basis for the conditions of release imposed," or to "confirm[] that all conditions of release had been removed," and to "return Petitioners' documents." (Civ. No. 26-424, Docket No. 19.) Respondents again did not timely respond to that Order. J.B.C.O. finally received his driver's license and work permit on March 4, 2026. Respondents have still failed to return J.S.C.M.'s work permit. (*See* Declaration of Tauria Rich ("Rich Decl.") ¶ 4, March 4, 2026, Docket No. 28-1.)[1]

---

[1] Respondents submitted an identical declaration in each of the above-captioned cases.

**B.     S.M.**

Respondents arrested Petitioner S.M. on January 25, 2026. The Court granted Petitioner's petition for habeas corpus on February 1, 2026, and ordered his release within 48 hours "without conditions" and "with all personal effects." *S.M. v. Bondi*, Civ. No. 26-639, 2026 WL 254582, at *2 (D. Minn. Feb. 1, 2026). Petitioner was released on February 1, 2026, without all her personal belongings—including without her cell phone—and with conditions.

On February 3, 2026, the Court issued an order finding that Respondents violated the Court's prior order by releasing Petitioner without all of her personal effects and with conditions. (Civ. No. 26-639, Docket No. 21.) Respondents were ordered to immediately remove Petitioner's conditions of release and return Petitioner's personal effects. (*Id.*) On February 5, 2026, Respondents filed a Status Report indicating that Petitioner was no longer subject to the conditions of release. Respondents had not, however, been able to locate Petitioner's personal effects. (Civ. No. 26-639, Docket No. 23.) On March 4, 2026, more than a month after Petitioner's release, Respondents filed an update indicating that Petitioner's "cellphone, clothing, boots, and jewelry have been found" and were available for pick up. (Rich Decl. ¶ 5.)

**C.     Christian A.S.C.**

The Court granted Petitioner Christian A.S.C.'s petition for habeas corpus on February 6, 2026, ordering Respondents to release him "with all personal effects, such as driver's licenses, passports, or immigration documents[.]" *Christian A.S.C. v. Bondi*, Civ.

7

No. 26-778, 2026 WL 323098, at *3 (D. Minn. Feb. 6, 2026). Petitioner was timely released. (*See* Civ. No. 26-778, Docket No. 8.) But on February 13, 2026, Petitioner informed the Court that Respondents violated the Court's order by failing to return Petitioner's Minnesota driver's license, his Guatemala driver's license, or his Guatemalan Consular Identification Card. (Civ. No. 26-778, Docket No. 10.)

Petitioner requested the Court keep this matter open but indicated that counsel was working with the Respondents to ensure the return of his property. On March 2, 2026, the Court filed an order noting Respondents' failure to return Petitioner's property, again ordering its return and ordering Respondents provide an update by March 4, 2026. On March 4, Respondents' counsel provided an update detailing their efforts to work with ICE to find Petitioner's three identification documents—but ultimately, "the Agency has deemed the property as lost." (Civ. No. 26-778, Docket No. 13.)

### D. Rosmary N.A.

The Court granted Petitioner Rosmary N.A.'s petition for habeas corpus on February 5, 2026, and ordered her release within 48 hours "with all personal effects, such as driver's licenses, passports, or immigration documents, and **without conditions** including location tracking or mandatory check-ins." *Rosmary N.A. v. Easterwood*, Civ. No. 26-832, 2026 WL 327903, at *2 (D. Minn. Feb. 5, 2026).

Respondents did not release Petitioner or file anything on the Docket in the ordered time frame. On February 10, 2026, Petitioner's counsel informed the Court that

Petitioner was still in ICE custody.  (Civ. No. 26-832, Docket No. 11.)  The Court ordered Petitioner's immediate release, a status update from Respondents by 5:00 p.m. on February 12, 2026**,** and noted that "[i]f Respondents have still failed to comply with the Court's orders in this case by 5:00 p.m. on February 12, 2026, a hearing will be scheduled regarding the necessity of contempt proceedings."  (Civ. No. 26-832, Docket No. 12.)  On February 19, 2026, having **still** heard nothing from Respondents, the Court scheduled a hearing regarding "the appropriateness of contempt" for February 25, 2026.  (Civ. No. 26-832, Docket No. 13.)  Later that day, Respondents' counsel finally updated the Court that Petitioner had been released on February 10, 2026.  (Civ. No. 26-832, Docket No. 15.)

On February 14, 2026, Petitioner notified the Court that she was still missing "all of her personal property" that had been taken by Respondents at the time of her detention including headphones, an iPhone, a watch, a wallet with debit and credit cards, personal documents, and a Minnesota identification card.  (Civ. No. 26-832, Docket No. 17.)  The Court, therefore, kept the hearing scheduled for February 25, 2026.  At that hearing, the Court and Petitioner were informed that Petitioner's property had been located in Texas, and the property would be returned to Minnesota via overnight delivery to arrive the next day.  (Civ. No. 26-832, Docket No. 21.)  Despite this representation, Respondents reported to the Court on March 1, 2026, that "that information was incorrect" and suggested that the parties should "proceed at this time based on the understanding that the property is officially lost[.]"  (*Id.*)

9

On March 4, 2026, however, Respondents reported that ICE had "located a backpack in El Paso in a sealed property bag with a property tag associated with Petitioner." (Rich Decl. ¶ 7.) At the time of the Court's hearing on March 5, 2026, it was unknown if this sealed property bag included all of Petitioner's personal property.

### E.     Riky A.M.L.

The Court granted Petitioner Riky A.M.L.'s petition for habeas corpus on February 17, 2026, ordered his release, and directed that "Respondents must release Petitioner with all personal effects, such as driver's license, passports, or immigration documents, and **without conditions** such as location tracking devices." *Riky A.M.L. v. Bondi*, Civ. No. 26-1429, 2026 WL 452419, at*2 (D. Minn. Feb. 17, 2026).

On February 20, 2026, both Respondents and Petitioner reported that Petitioner had been released (Civ. No. 26-1429, Docket Nos. 8–9), but Petitioner reported that he had not received his "nail gun,"[2] "[o]ver $100 in cash," his social security card, or his "Work Authorization Card." (Civ. No. 26-1429, Docket No. 8.)

On March 2, 2026, the Court issued an Order to Show Cause and directed Respondents or their agents to immediately return all property of Petitioner in their possession, custody, or control and to file by 5:00 p.m. on March 4, 2026, a declaration confirming that all of Petitioner's property was returned to Petitioner or identifying each item that was not returned.

---

[2] At the March 5, 2026 hearing, counsel for Petitioner Riky A.M.L. indicated that the nail gun was valued at around $400.

On March 4, 2026, shortly after 5:00 p.m., Respondents filed a Declaration and a Notice (Civ. No. 26-1429, Docket Nos. 12–13), which indicated that Petitioner's social security card had been located and was being transported back to Minnesota from Texas but that "ICE is still actively working on locating the remaining property" (Civ. No. 26-1429, Decl. of Richard Pryd, March 4, 2026, Docket No. 12).

## II.   PROCEDURAL HISTORY

On March 3, 2026, the Court gave notice of a hearing on March 5, 2026, in six cases. Respondents submitted a Declaration from Tauria Rich Deputy Field Office Director for the St. Paul Field Office of U.S. Immigration and Customs Enforcement (ICE). (*See* Rich Decl. ¶ 1.) Rich declared that

> [i]n each of the above-captioned cases, at my direction, ICE personnel in Minnesota conducted a diligent search of each Petitioner's Alien File (A-File), and/or Temporary File (T-File). ICE reviewed databases relating to custody, as well as any available property receipts to identify missing property and any potential location of such property, and each such location was searched. Minnesota ICE personnel also contacted the custodians at any other ICE locations at which Petitioners were detained to request further searching for the claimed missing property. Custodians at each such location advised that they conducted the same or similar searches.

(*Id.* ¶ 3.) Rich's declaration also stated "ICE will deem any outstanding property as lost should any of the above-listed Petitioners inform the U.S. Attorney's Office that that is their preference and ICE will pay compensation due therefor." (*Id.* ¶ 10.)

In the five above-captioned cases, Respondents did not return all of the Petitioners' property in advance of the hearing and thus continue to be in violation of the

Court's orders. At the hearing on March 5, 2026, counsel for each of the Petitioners were present, and the U.S. Attorney for the District of Minnesota, Daniel Rosen, spoke on behalf of the Respondents.

## DISCUSSION

### A.    Return of Property & Compensation

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). In these cases (as well as many others across the District of Minnesota), Respondents were ordered to release Petitioners with all of their personal belongings or to return the belongings after Petitioners' releases. Respondents have not done so. Respondents have represented in certain cases that the belongings cannot be found. (*See, e.g.*, Rich Decl. ¶ 6 ("After a diligent search, ICE concludes that Petitioner's ID cards are lost and any further searching would be futile.").)

Both ICE (through the Rich Declaration) and U.S. Attorney Rosen (in representations made at the Court's hearing on March 5) indicated to the Court that the Department of Homeland Security intends to remedy these violations by reimbursing Petitioners for their property through claims under the Federal Torts Claims Act (FTCA). U.S. Attorney Rosen further represented to the Court that this process could be expedited and that Petitioners would not be required to file a separate lawsuit to be compensated.

If Respondents subsequently locate the property, they will return it to Petitioner regardless of any prior tort claim resolution.[3]

The Court will therefore direct the Petitioners who wish to seek monetary compensation for any item of personal property or other type of loss (including, for example, lost wages), to submit a claim under the FTCA within five days of this Order.[4] Petitioners should also provide the Court with a copy of the completed claim form.[5]

For any item of personal property that Petitioner declines to seek replacement or monetary compensation and only wishes ICE to continue trying to find, the Court will order Petitioner to, within five days of this Order, inform Respondents' counsel of the identity of the item(s) and provide notice to the Court of the items for which they are not seeking monetary compensation.[6]

### B. Work Permits

At least two Petitioners indicate that Respondents have lost their work permits (more formally known as Employment Authorization Documents (Form I-766/EAD)).

---

[3] (*See* Civ. No. 26-832, Docket No. 26 ("Should the property be found, it would be returned to Petitioner notwithstanding any prior tort claim resolution.").)

[4] During the March 5, 2026 hearing, U.S. Attorney Rosen stated that Respondents and their counsel would "provide to each of the individuals who want to pursue that process the information that they need to submit their claim."

[5] So that forms need not be filed on the docket, unredacted forms should be submitted to the Court by email to Tunheim_Chambers@mnd.uscourts.gov.

[6] This information should be submitted to the Court by email to Tunheim_Chambers@mnd.uscourts.gov.

These work permits are issued by U.S. Citizenship and Immigration Services, a sub-agency of Department of Homeland Security. At the March 5, 2026 hearing, Respondents indicated they are able and willing to facilitate any of Petitioners' work permits. Because U.S. Attorney Rosen represented at the Court's March 5, 2026 hearing that this replacement could be effectuated within five business days, the Court will order that the Replacement occur—without payment of fees—within five business days of a Petitioner informing Respondents' counsel of their desire to have their work permit replaced. Petitioners should also inform the Court they have made this request.[7]

### C.   Contempt

"Civil contempt may be employed either to coerce [a non-compliant party] into compliance with a court order or to compensate the complainant for losses sustained, or both." *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). "It is well-settled that a court's contempt power extends to non-parties who have notice of the court's order and the responsibility to comply with it." *Id.* at 507.

Respondents have, in each case, repeatedly been given notice of the Court's orders that they must release Petitioners with all personal effects or (e.g., in the case of J.B.C.O. and J.S.C.M.) the Court's orders that Petitioners' personal effects must be returned. Respondents have not complied with these orders. Because of Respondents' ongoing efforts to reach compliance (albeit in many instances only because of the Court's

---

[7] This information, including the time the request was made to Respondents' counsel, should be submitted to the Court by email to Tunheim_Chambers@mnd.uscourts.gov.

14

intervention), the Court concludes contempt is not warranted at this time.  The Court concludes, however, that these ongoing violations can be cured only by either (1) returning Petitioners' belongings or (2) full reimbursement of each Petitioner's claim under the FTCA within 30 days of this Order.

For any claim Respondents do not fully reimburse within 30 days of this order, the Court will hold a hearing and, if appropriate, issue a further order regarding contempt.  In the event there is no good faith defense for Respondents' continued noncompliance, the Court will, if appropriate, impose civil daily fines upon Respondents and/or Respondents' counsel until the violation is cured.  Similarly, for any replacement Employment Authorization Document requested by a Petitioner and not replaced within 15 days of this Order, the Court will, if needed, hold a hearing and will, if appropriate, issue a further order regarding contempt.  Again, in the event there is no good faith defense for the contempt, the Court will impose civil daily fines upon Respondents and/or Respondents' counsel until the non-compliance is cured.

## CONCLUSION

In the cases before the Court, Petitioners were unlawfully arrested and detained, and the Court ordered their immediate release.  Yet Petitioners' hardships did not end when they were released from detention because Respondents retained personal belongings that are critical to ensuring Petitioners' daily safety and well-being.

Named Petitioners' experiences are demonstrative of what habeas petitioners have experienced across the District of Minnesota during Operation Metro Surge. Some petitioners, including J.B.C.O., are the principal breadwinners for their family and, as noted by their counsel,[8] the loss of their work authorization documents has resulted in lost wages and hardships for their family. Other petitioners, including Rosmary N.A., have been left without any form of identification or their bank cards, preventing them from accessing their bank accounts, resulting in food insecurity. And many petitioners, including some in the above-captioned cases, have been released without their cell phones, resulting in their inability to access any documents stored on their phone, contact their friends and loved ones, or perform many other functions of daily life.[9] Still others have lost jobs because of their detention and are hindered in their efforts to secure new ones by their lack of access to their identification documents and cell phones. Petitioners who have lost their driver's licenses have lost the ability to move about freely—and for those who drove for a living (e.g., Uber and Lyft drivers), they have also lost a substantial means of generating income. Perhaps most troublingly, many petitioners, including Christian A.S.C., are terrified that the loss of their personal identification documents will

---

[8] The impact on Petitioners in this case was provided by their counsel at the Court's hearing on March 5, 2026.

[9] More than ten years ago, Chief Justice Roberts noted that modern cell phones are "now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385 (2014). The amount of personal data cell phones hold and our society's reliance on them have only continued to increase in the interim.

16

subject them to additional arrests because they will not be able to prove who they are—or aren't.

The Court directs Respondents to swiftly remedy their ongoing violations of the Court's orders in these cases. Absent prompt resolution of Petitioners' property claims, the Court will issue a further order to show cause regarding the necessity of daily civil fines to ensure compliance.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Within **24 hours** of this Order, Respondents' counsel are directed to provide the required forms and instructions regarding the Federal Tort Claims Act (FTCA) process to Petitioners' counsel.

2. For any item of personal property or other type of loss for which Petitioner wishes to seek monetary compensation, each Petitioner shall, within five days of this Order:

    a. Submit, as directed by Respondents' counsel, a claim under the Federal Tort Claims Act (FTCA), and

    b. Provide the Court a copy of the claim as submitted by email to Tunheim_Chambers@mnd.uscourts.gov.

3. Respondents shall facilitate and reimburse all FTCA claims submitted by Petitioners within **30 days**.

4. Should any property for which an FTCA claim has been submitted be later found, Respondents shall return that property to Petitioner, notwithstanding any prior tort claim resolution.

5. For any FTCA claim not fully reimbursed within **30 days** of this Order, the Court will issue a further order regarding contempt.

6. Within **5 days** of this Order, any Petitioner seeking replacement of their Employment Authorization Document (Form I-766/EAD), shall notify Respondents' counsel and shall inform the Court by email to Tunheim_Chambers@mnd.uscourts.gov.

7. Respondents shall facilitate the replacement without fees of the Petitioners' Employment Authorization Documents within **5 business days** of Petitioner's request being communicated to Respondents' counsel.

8. For any replacement Employment Authorization Document requested but not replaced within **15 days** of this order, the Court will issue a further Order regarding contempt.

9. For any item of personal property that Petitioner declines to seek replacement or monetary compensation and only wishes ICE to continue their search, Petitioner shall, within **5 days** of this Order:

    a. inform Respondents' counsel of the identity of the item(s), and

    b. provide notice to the Court of the items for which they are not seeking monetary compensation by email to Tunheim_Chambers@mnd.uscourts.gov.

10. The Court will hold a hearing at **2:00 p.m. on April 6, 2026**, to address whether and to what extent Petitioners' claims have not been satisfied and to, if necessary, impose civil contempt and daily civil fines until full compliance is achieved. The following individuals are directed to appear:

    a. Daniel Rosen, United States Attorney for the District of Minnesota;

    b. David W. Fuller, Assistant United States Attorney and Acting Chief of the Civil Division of the United States Attorney's Office for the District of Minnesota;

    c. A representative of Immigration and Customs Enforcement who had notice of this Order and the Court's previous Orders in each of the above-captioned cases concerning return of property and documentation.

DATED: March 6, 2026                                      /s/ John R. Tunheim
at Minneapolis, Minnesota.                               JOHN R. TUNHEIM
                                                                       United States District Judge